DECISION AND JUDGMENT ENTRY
{¶ 1} James R. Jamison ("Father") appeals the June 12, 2002 civil protection order ("CPO") and the September 24, 2002 judgment entry issued by the Scioto County Court of Common Pleas, Domestic Relations Division, denying his motion to vacate or modify. Because we find that Father failed to timely and directly appeal the trial court's issuance of the civil protection order, we overrule his second and third assignments of error, which he could have raised in such an appeal. Because we find that Father failed to either (a) challenge the trial court's failure to find a change in the children's circumstances, or (b) assert that a reallocation served the children's best interest in his motion to vacate or modify the CPO, we find that Father has waived his right to raise these issues on appeal and overrule his sixth assignment of error. Because we find the trial court had both personal jurisdiction over father, and subject matter jurisdiction to temporarily allocate the parties' parental rights and responsibilities, we overrule Father's first, fourth and fifth assignments of error. Accordingly, we overrule each of Father's six assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} On May 1, 2002, the Scioto County Court of Common Pleas, Domestic Relations Division, conducted a final divorce hearing for Father and Cherie Jamison, nka Parker, ("Mother"). The final divorce decree, issued on May 16, 2002, designated Mother as the residential parent and legal custodian of the parties' minor children, Christian Jamison (DOB: 12/18/1996), and James Jamison, II (DOB: 4/7/2001), and granted Father parenting time, which, after a brief period of adjustment, was to become standard local rule visitation.
 {¶ 3} On May 15, 2002, Mother filed a petition for a domestic violence civil protection order against Father in the Scioto County Court of Common Pleas, Domestic Relations Division, seeking protection for herself and the parties' minor children. In her petition, Mother alleged that on May 2, 2002, she went to retrieve property awarded to her in the divorce proceeding, when Father came out of nowhere, intoxicated, and with a knife. Mother stated that she was carrying one of the parties' children at the time of the incident, and alleged that Father ran toward her, swinging the knife, trying to cut her and the child. Mother further alleged that Father told her he would cut her throat if she did not leave immediately. That day, the trial court conducted an ex parte hearing and granted an ex parte civil protection order, setting the full hearing on "May 29 at 1:15."
 {¶ 4} The record reflects that the Scioto County Sheriff failed to obtain personal service upon Father before the May 29, 2002 hearing. Accordingly, the trial court issued a new notice of hearing, setting the full hearing for June 12, 2002, at 8:45 a.m. The record reflects, and Father admits, that the Scioto County Sheriff obtained personal service upon Father at the Scioto County Jail on June 7, 2002 — 5 days before the scheduled hearing. Despite receiving timely notice, Father did not appear at the June 12, 2002 hearing, nor did he request a continuance.
 {¶ 5} After conducting the full hearing, the trial court found that Mother's allegations were true, and issued a CPO protecting Mother and the parties' two minor children for five years. With regard to the parties' parental rights and responsibilities, the trial court noted that the allocation was to be pursuant to the terms of the divorce decree, but that Father's visitation rights were suspended. The Scioto County Sheriff served Father with the CPO on June 12, 2002.
 {¶ 6} On August 22, 2002, more than two months after the trial court issued the CPO, Father filed an objection to the CPO, wherein he alleged that he was served with the ex parte CPO and notice of the final hearing on June 7, 2002. Father alleged that the trial court did not present him with an opportunity to defend and/or object to the petition, stating that he was incarcerated from May 30th until June 28th, and that he was not transported from the Scioto County Jail for attendance at the hearing. The trial court found that Father did not timely file his objection, and accordingly overruled it.
 {¶ 7} On September 17, 2002, Father filed a motion to set aside or modify the CPO, again alleging that he was denied the opportunity to defend against the petition, in that he was not transported from the jail to attend the final hearing. Additionally, Father noted that as a result of his absence at the final CPO hearing, his right to visit his children was suspended for the five-year duration of the CPO. The trial court denied Father's motion, noting that Father failed to timely appeal the CPO and that the magistrate's decision was a final judgment. The trial court also noted that Father's grounds in support of his motion were nearly identical to those alleged in his objection, which the court had previously overruled.
 {¶ 8} On October 23, 2002, Father filed his notice of appeal, and now alleges six assignments of error: "I. The trial court erred by issuing a civil protection order without appellant able to be present due to incarceration and lack of notice which was in violation of appellant's right to due process. II. The trial court erred by issuing a civil protection order that also allocated parental rights and responsibilities since a previous determination of parental rights and responsibilities had already been made by a court. III. The trial court erred by issuing a civil protection order which modified the terms of a previous custody/visitation order absent a finding that a change of circumstances has occurred in the circumstances of the children or the children's residential parent and that a modification was necessary to serve the best interest of the children. IV. The trial court erred by denying a motion to vacate/modify a civil protection order that was issued without appellant able to be present due to incarceration and lack of notice which was in violation of appellant's right to due process. V. The trial court erred by denying a motion to vacate/modify a civil protection order that also allocated parental rights and responsibilities since a previous determination of parental rights and responsibilities had already been made by a court. VI. The trial court erred by denying a motion to vacate/modify a civil protection order which modified the terms of a previous custody/visitation order absent a finding that a change of circumstances has occurred in the circumstances of the children or the children's residential parent and that a modification was necessary to serve the best interest of the children."
 {¶ 9} Mother filed a motion to dismiss Father's appeal on the ground that it was not timely filed. We denied Mother's motion, construing Father's September 17 motion to set aside or modify the June 12 judgment to be a motion to vacate for lack of jurisdiction and/or motion for relief from judgment pursuant to Civ.R. 60(B).
 II. {¶ 10} Initially, we note that pursuant to R.C. 3113.31(G), a domestic violence full hearing civil protection order is a final appealable order. App.R. 4(A) provides, in relevant part: "A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed * * *." Father failed to timely appeal the June 12, 2002 CPO. "If a final appealable order is not timely appealed, all matters that could have been reviewed had an appeal been taken become res judicata and are not reviewable in a related or subsequent proceeding or appeal." Jeffers v. Jeffers (Feb. 13, 2001), Franklin App. No. 00AP-442, citing, e.g. In re Adoption of Greer (1994),70 Ohio St.3d 293, fn. 1, citing In re Adoption of Jorgenson (1986),33 Ohio App.3d 207, 208-09.
 {¶ 11} In his second assignment of error, Father argues that the trial court erred in issuing a CPO that allocated parental rights and responsibilities when the court had already allocated parental rights and responsibilities in the context of the divorce proceeding. Father's third assignment of error alleges that the trial court erred in modifying the terms of the previous visitation order without first finding that there was a change in the children's circumstances, and the modification was necessary to serve the children's best interests. Father could have raised these issues in a direct appeal of the CPO. Therefore, the issues are res judicata and we will not consider them. Accordingly, we overrule Father's second and third assignments of error.
 {¶ 12} In his sixth assignment of error, Father alleges that the trial court erred by denying his motion to vacate or modify the CPO because the CPO modified a previous visitation order without first making a determination that there had been a change of circumstances, or making a finding that the modification was necessary to serve the children's best interests. However, we note that Father did not raise this issue in his motion to vacate or modify the CPO. Ohio courts have long recognized that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Foran v. Fisher Foods,Inc. (1985), 17 Ohio St.3d 193, 194. Accordingly, we overrule Father's sixth assignment of error.
 III. {¶ 13} In his first and fourth assignments of error, Father claims the trial court violated his constitutional right to due process in that he received inadequate notice of the final CPO hearing, and he was unable to attend the hearing due to his incarceration. We interpret Father's first and fourth assignments of error, as they relate to his claim of inadequate notice, to be a challenge of the trial court's personal jurisdiction over Father. Because these assignments of error are virtually identical, we address them together.
 {¶ 14} The Ohio Supreme Court has held that: "[i]t is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void." LincolnTavern, Inc. v. Snader (1956), 165 Ohio St. 61, 64. Ohio Courts posses an inherent power to vacate a void judgment. Id., at paragraph one of the syllabus; Westmoreland v. Valley Homes Corp. (1975), 42 Ohio St.2d 291,294. A party may challenge a void judgment at any time. See Internatl.Lottery, Inc. v. Kerouac (1995), 102 Ohio App.3d 660, 665. A void judgment "can be attacked by motion, on appeal, or collaterally without time restrictions." In re Murphy (1983), 10 Ohio App.3d 134, 138. Therefore, to the extent that they address jurisdictional issues we address the merits of Father's first and fourth assignments of error together.
 {¶ 15} Because a trial court's determination of whether personal jurisdiction over a party exists is a question of law, we review the trial court's determination of personal jurisdiction de novo. Wiltbergerv. Davis (1996), 110 Ohio App.3d 46, 51-52.
 {¶ 16} In order to satisfy the requirements of due process, a court must give notice setting forth the alleged misconduct with particularity, and give it sufficiently in advance of scheduled proceedings to afford the respondent a reasonable opportunity to prepare.State ex rel. Johnson v. Perry Cty. Court (1986), 25 Ohio St.3d 53,57-58, citing In re Gault (1967), 387 U.S. 1, 33-34. Father admits that he was served with the ex parte CPO and the notice of hearing on June 7, 2002 — five days before the scheduled hearing. However, he claims that the notice he received was inadequate to confer jurisdiction upon the trial court.
 {¶ 17} Specifically, Father notes that the ex parte CPO contained a notice of hearing, setting the final hearing for May 29, 2002, and a separate notice of hearing setting the final hearing for June 12, 2002. Father contends that the discrepancy regarding the date of the final hearing, and the trial court's failure to make the necessary arrangements to have Father transported from the Scioto County Jail to attend the hearing deprived him of his opportunity to be heard at the final CPO hearing. Father cites no legal authority to support his position.
 {¶ 18} We note that the May 29, 2002 hearing date had already passed at the time Father was served. Thus, Father could reasonably presume, or confirm with minimal effort, that the correct hearing date was June 12, 2002.[1] Therefore, we find that the documents actually served upon Father were sufficient to clothe the trial court with the jurisdiction to proceed.
 {¶ 19} Additionally, we find no merit in Father's claim that it was the trial court's responsibility to have him transported from the Scioto County Jail to attend the final CPO hearing. Father does not allege that he informed anyone at the jail of the pending hearing, that he requested they transport him to the hearing, or that officials refused such a request. Because the record reflects that Father failed to file a motion to transport, requesting that the trial court order the Scioto County Sheriff to transport him to the hearing, we find that he has waived any right of transportation to the final CPO hearing.
 {¶ 20} Ohio Courts have repeatedly recognized that a person who is incarcerated has no absolute right to appear at a civil action. Mancinov. Lakewood (1987), 36 Ohio App.3d 219, 221. The United States Supreme Court has articulated the reasoning for this rule, noting: "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those limited is the otherwise unqualified right given * * * to parties in all courts of the United States to `plead and manage their own causes personally.'" Price v.Johnston (1948), 334 U.S. 266, 285, overruled on other grounds byMcCleskey v. Zant (1991), 499 U.S. 467.
 {¶ 21} We find that the trial court gave Father sufficient notice of the final hearing to satisfy the requirements of due process and obtain personal jurisdiction over Father. We find no support for Father's contention that the trial court had a duty to sua sponte order Father's transport from the Scioto County Jail to secure his attendance at the final CPO hearing. Additionally, we find that Father failed to file either a motion to transport, or a motion for continuance pending his release from jail, either of which could have enabled his attendance at the final CPO hearing. Accordingly, we overrule Father's first and fourth assignments of error.
 IV. {¶ 22} In his fifth assignment of error, Father claims the trial court erred in denying his motion to vacate or modify the CPO, on the ground that the trial court exceeded its jurisdiction by allocating parental rights and responsibilities in the CPO. Father notes that pursuant to R.C. 3113.31(E)(1)(d), a trial court issuing a CPO after a full hearing "may temporarily allocate parental rights, or establish temporary parenting time rights with regard to minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights."
 {¶ 23} The essence of Father's argument is that, because there was a prior court order dealing with the allocation of the parties' parental rights and responsibilities, the trial court lacked subject matter jurisdiction to suspend his visitation with the children for the duration of the CPO. A judgment rendered by a court lacking subject matter jurisdiction, like a judgment rendered by a court lacking personal jurisdiction, is void ab initio. Patton v. Diemer (1988), 35 Ohio St.3d 68, paragraph three of the syllabus. The trial court's order suspending Father's visitation in this case implies that the court believed it possessed subject matter jurisdiction. We review that legal determinationde novo without any deference to the conclusion of the trial court. Burnsv. Daily (1996), 114 Ohio App.3d 693, 701.
 {¶ 24} Pursuant to R.C. 3113.31(E)(1)(d), a trial court issuing a CPO may temporarily allocate parental rights and responsibilities for the minor children if no other court has previously or is concurrently doing so. We have interpreted this limitation of the court's authority as a means to prevent forum shopping when another court has already issued a custody order. Stella v. Platz (June 17, 1999), Washington App. No. 98CA18. However, the Twelfth District Court of Appeals has held that when the court issuing the CPO is the same court that previously allocated the parental rights and responsibilities of the parties, the trial court has jurisdiction under R.C. 3113.31(E)(1)(d) to allocate parental rights and responsibilities in the context of the CPO proceeding. Couch v. Harrison
(Feb. 12, 2001), Clermont App. No. CA2000-08-063.
 {¶ 25} Here, because the same trial court presided over the parties divorce and the CPO proceedings, we find that the trial court had subject matter jurisdiction to temporarily allocate the parties' parental rights and responsibilities. Accordingly, we overrule Father's fifth assignment of error.
 {¶ 26} In conclusion, we overrule each of Father's six assignments of error, and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] While the record does not contain an actual entry granting a continuance of the May 29 hearing, it clearly reflects that Father had not yet been served at the time of that hearing, and a new notice setting the hearing for June 12, 2002.