[Cite as *Novello v. Novello*, 2011-Ohio-2973.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ROBERTA NOVELLO, | ) | |
| | ) | CASE NO. 10 NO 378 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JOHN NOVELLO, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
Court, Case No. 209-0142.


JUDGMENT:                                    Affirmed.


APPEARANCES:
For Plaintiff-Appellee:              Attorney Amber Wootton
                                              Tribble, Scott, Plumber & Padden
                                              P.O. Box 640
                                              139 West 8th Street
                                              Cambridge, OH  43725


For Defendant-Appellant:          Attorney Thomas T. Mullen
                                              3500 West Market Street, Suite 4
                                              Fairlawn, OH  44333



JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich


                                              Dated:  June 10, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, John Novello, appeals the August 13, 2010 judgment of the Noble County Court of Common Pleas, granting a divorce between him and Plaintiff-Appellee, Roberta Novello. John argues that the trial court's property division constituted an abuse of discretion, that he was denied effective assistance of counsel and that the court erred by failing to consider the spousal support factors contained in R.C. 3105.18(C)(1) and the property division factors contained in R.C. 3105.171(F).

{¶2} Upon review, these arguments are meritless. The court divided the marital assets nearly equally, and this division is reasonable based upon the applicable property division factors. The right to effective assistance of counsel is not one that can be invoked in a divorce case. Finally, the court did not order spousal support, so there was no need for it to consider the factors contained in R.C. 3105.18(C)(1). Accordingly, the judgment of the trial court is affirmed.

{¶3}    **Facts and Procedural History**

{¶4} The Novellos were married in 1956. In 1970, they moved to Noble County and purchased a home situated on approximately 80 acres of land in Caldwell. During the course of the marriage, Roberta rarely worked outside of the home. Instead, she was responsible for rearing the couple's five children, all of whom had long since emancipated at the time of the divorce. John worked in construction and mining for approximately forty years and then retired.

{¶5} In September 2009, Roberta moved out of the marital home and filed a complaint for divorce which John answered. Temporary orders were issued, and when settlement negotiations failed, John filed an amended answer and counterclaim.

{¶6} A final divorce hearing was held on July 19, 2010. At that time Roberta was 71 years old and John was 74, and both parties had health problems. The parties each had separate credit card debt in their own name. Since the separation, John continued to live in the marital home and paid the mortgage, taxes, insurance, and maintenance costs.

{¶7} John received income from three sources: $6,932.76 annually from a United Mine Workers of America pension; $2,834.28 annually from an Operating Engineers

pension; and $15,781.20 from Social Security. Roberta received $6,457.20 per year in Social Security benefits which were derived from John's account. Roberta testified that the value of the marital home and land was approximately $175,000. John agreed that it could appraise for that amount, but that it would sell for more. The parties agreed that they owe approximately $10,000 to People's Bank who holds the mortgage on the property.

{¶8} Both parties agreed that the real estate and the pensions were entirely marital; that all personal property, including vehicles, had been divided; and that they were incompatible as marriage partners. At the close of the hearing, exhibits regarding the value of the pensions and the Social Security benefits were admitted into evidence.

{¶9} On August 13, 2010, the trial court issued a judgment entry granting the parties a divorce on incompatibility grounds. The court approved the division of tangible personal property that had already been completed by the parties. The court awarded Roberta her Social Security pension, 95% of John's UMWA pension, and 95% of John's Operating Engineers pension. The court awarded John his Social Security pension, 5% of his UMWA pension, and 5% of his Operating Engineers pension. The result of this division is that Roberta would receive $15,735.89 annually from her Social Security and the two pensions; and John would receive $16,269.55 from his Social Security and the two pensions.

{¶10} With regard to the marital residence, the court gave John the option of buying out Roberta's one-half interest in the real estate for $82,500.00 by electing to do so within 30 days of the date of the order. If he elected that option, John would assume and agree to pay the mortgage and the closing would take place within 90 days. Alternatively, if John did not elect to purchase the real estate it would be listed for sale forthwith and if not sold within 90 days of being listed would be sold at auction. The court ordered that any proceeds, after deducting the costs of sale, shall be divided one-half to each party. The court granted John the exclusive right to reside in the marital residence until it is sold. The court did not order spousal support and did not retain jurisdiction on that issue. Finally, the court assessed costs equally to both parties.

## Property Division

{¶11} In his first of three assignments of error, John asserts:

{¶12} "The trial court erred and abused its discretion in the division of martial [sic] property."

{¶13} When granting a divorce, the trial court is required to equitably divide and distribute the marital property between the parties. R.C. 3105.171(B); *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. When dividing marital property, the trial court must divide it equally between the parties unless an equal division would be inequitable. R.C. 3105.171(C)(1); see, also, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293 (A potentially equal division of the marital property is the starting point of the trial court's analysis). In determining the equitable division of the marital property, the court must consider the factors listed in R.C. 3105.171(F).

{¶14} However, "R.C. 3105.171, 'does not require the trial court to address each statutory factor in its written findings of fact. In the absence of an affirmative showing * * * that the court failed to consider the factors, we presume that the trial court followed the statute.'" *Hiscox v. Hiscox*, 7th Dist. No. 07 CO 7, 2008-Ohio-5209, at ¶65, quoting *Eddy v. Eddy*, 4th Dist. No. 01CA20, 2002-Ohio-4345, at ¶60. Thus, while a court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair and equitable, "it *need not* explain in *minute* detail its reasoning." *Cope v. Guehl*, 7th Dist. No. 07 CO 35, 2009-Ohio-2891, at ¶38 (emphasis added).

{¶15} The trial court's property division determination is reviewed under an abuse of discretion standard. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶5. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. And the scope of that review is to examine the overall equity of the division of marital asserts, "rather [than] engage in a detailed analysis of every 'jot and tittle' of marital property: '[I]t is not this court's role to conduct an item by item review of the marital assets and liabilities. Our

review is limited to the equity, i.e., fairness * * *.'" *Hiscox*, supra at ¶53, quoting, *Fergus v. Fergus* (1997), 117 Ohio App.3d 432, 438, 690 N.E.2d 949.

{¶16} John first contends that the trial court did not articulate the reasons behind its property division determination. John raises this distinct argument within his third assignment of error, but for ease of analysis it will be discussed here.

{¶17} Although the trial court did not explicitly cite to R.C. 3105.171(F) in the divorce decree, the court did discuss the substance of the applicable factors contained within that statute. Specifically, the court discussed the long duration of the marriage (R.C. 3105.171(F)(1)); the assets and liabilities of both parties (R.C. 3105.171(F)(2)); and the parties' retirement benefits (R.C. 3105.171(F)(9)). As to the marital home, the court also appeared to consider the economic desirability of retaining it intact, its liquidity, and the necessary costs to sell it, as the court gave John the option of buying out Roberta's interest or putting the home on the market to be sold, and if not sold within 90 days, auctioned. See R.C. 3105.171(F)(4),(5),(7). The court also considered the fact that the parties were of retirement age, living off of a fixed income of Social Security and pensions, and that Roberta, a life-long home-maker, rarely worked outside of the home and therefore her monthly income was much smaller. See R.C. 3105.171(F)(10). Thus, the court gave sufficient reasoning for its decision regarding the property division.

{¶18} Nor does the property division constitute an abuse of discretion. The trial court essentially equalized the parties' benefits. After dividing the pensions, Roberta will receive $15,735.89 per year and John $16,269.55 per year. The trial court's disposition of the marital home was likewise reasonable. The court gave John the option to buy out Roberta's interest in the home by paying her a lump sum of $82,500.00. The lump sum payment is based upon an appraised value of the home that was agreed upon by both parties at trial. Alternatively, John could decide that the real estate be sold, and in that case the profits from the sale would be split equally.

{¶19} Finally, the trial court did not abuse its discretion by failing to credit John with the mortgage payments he made after the parties' separation in light of the fact that John continued to live in the house during that time. See *Stacy v. Stacy*, 11th Dist. No.

2004-A-0076, 2005-Ohio-5289, at ¶36 (trial court did not err in failing to award husband reimbursement for the portion of mortgage payments attributable to principal and interest, as husband had exclusive use of the premises during the pending divorce litigation, and the wife had to maintain a separate residence); *Patridge v. Matthews* (Feb. 20, 2001), 12th Dist. No. CA2000-04-007, at *4 (trial court did not err in failing to credit wife with mortgage payments she made on the marital residence after the parties' separation, as the wife had the benefit of living in the house, while the husband did not).

{¶20} Based on the parties' advanced age, their limited financial means, and the over fifty-year duration of the marriage, the trial court's division of property was reasonable and not an abuse of discretion. Accordingly, John's first assignment of error is meritless.

### Ineffective Assistance of Counsel

{¶21} In his second assignment of error, John asserts:

{¶22} "Appellant John Novello was denied a fair trial and denied his due process rights due to ineffective assistance of counsel."

{¶23} The Sixth Amendment guarantees a defendant effective counsel in criminal prosecutions. There is no such guarantee in civil actions. "The right to effective assistance of counsel is not a right that can be invoked in a divorce case." *Selby v. Selby*, 7th Dist. No. 06 BE 55, 2007-Ohio-6700, at ¶14, citing *Roth v. Roth* (1989), 65 Ohio App.3d 768, 776, 585 N.E.2d 482. Accordingly, John's second assignment of error is meritless.

### Consideration of Statutory Factors

{¶24} In his third and final assignment of error, John asserts:

{¶25} "The trial court erred in the application of O.R.C. § 3105.18 or O.R.C. § 3105.17 as it relates to spousal support and the division of martial [sic] property."

{¶26} As we have addressed John's argument regarding the property division above, we turn to John's contention that the trial court erred by failing to consider the spousal support factors contained in R.C. 3105.18. However, this statute applies only to spousal support, which the trial court did not award in this case. The final decree states:

"No spousal support is ordered. The Court does not retain jurisdiction on that issue."

{¶27} The trial court did divide John's two vested pensions, which in turn will provide a stream of monthly income to Roberta. However, a vested pension plan accumulated during the marriage is a marital asset which must be considered when dividing marital property. *Blackledge v. Blackledge*, 5th Dist. No. 03-CA-44, 2004-Ohio-2086, at ¶16, citing *Bisker v. Bisker*, 69 Ohio St.3d 608, 635 N.E.2d 308. Thus, awarding a percentage of these pensions to Roberta is not the same as awarding spousal support.

{¶28} The case cited by John in support of this assignment of error, *Graham v. Graham*, 7th Dist. No. 08-NO-353, 2009-Ohio-6876, is inapposite as that case involved insufficient findings pertaining to spousal support. Thus, the trial court did not err by failing to consider the spousal support factors in R.C. 3105.18(C)(1). Accordingly, John's third assignment of error is meritless.

{¶29} In conclusion, the trial court divided the marital assets nearly equally, and this division is reasonable based upon the applicable statutory property division factors. The right to effective assistance of counsel is not one that can be invoked in a divorce case. Finally, the court did not order spousal support, so there was no need for it to consider the factors contained in R.C. 3105.18. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.